## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANJAY KRISHNAN, )<br><br>Plaintiff, )<br><br>v. )<br><br>BLUEPRINT HEALTHCARE LLC, )<br>AKINDELE MAJEKODUNMI, )<br><br>Defendants. ) | Case No. 19-cv-11708-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **September 17, 2021**

### I.    Introduction

Plaintiff Sanjay Krishnan ("Krishnan") has filed this lawsuit against his former employer, Defendant Blueprint Healthcare LLC ("Blueprint") and its manager, Akindele Majekodunmi ("Majekodunmi") (collectively, "Defendants") alleging violations of state wage and hours laws. D. 24. Krishnan has moved for partial summary judgment as to Defendants' counterclaims, D. 44, and Defendants have moved for summary judgment as to all of Krishnan's claims and its counterclaims. D. 47. Defendants also filed a motion regarding choice of law, D. 57, which the Court ALLOWS. For the reasons stated below, the Court ALLOWS Krishnan's motion for partial summary judgment, D. 44, and DENIES in part and ALLOWS in part Defendants' motion for summary judgment, D. 47.

### II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material

1

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

Unless otherwise noted, the following facts are undisputed.  Majekodunmi is an owner of Blueprint, a limited liability healthcare company in Massachusetts.  D. 46 ¶¶ 1, 3; D. 51 ¶¶ 1, 3; D. 54 ¶¶ 1, 3; D. 60 ¶¶ 1, 3.  Blueprint hired Krishnan, a medical doctor, to provide services at its New Hampshire facilities around October 1, 2018.  D. 46 ¶ 4; D. 51 ¶ 4; D. 54 ¶ 4; D. 60 ¶ 4. Krishnan and Blueprint executed an Employment Agreement (the "Agreement") on September 23, 2020, which Majekodunmi signed on behalf of Blueprint.  D. 46 ¶ 5; D. 51 ¶ 5; D. 54 ¶ 5; D. 60 ¶ 5.  During Krishnan's employment, which terminated on May 24, 2019, D. 46 ¶ 4; D. 51 ¶ 4, D. 54 ¶ 4; D. 60 ¶ 4, Krishnan took at least one week of paid time off, D. 46 ¶ 13; D. 51 ¶ 13; D. 54 ¶ 13; D. 60 ¶ 13.  The parties dispute how much paid time off Krishnan was entitled to, D. 46 ¶¶ 8-9; D. 51 ¶¶ 8-9; D. 54 ¶¶ 8-9; D. 60 ¶¶ 8-9, and whether Blueprint failed to pay Krishnan his accrued and unused paid time off ("PTO") on the date of his termination or thereafter, D. 46 ¶ 14;

D. 51 ¶ 14; D. 54 ¶ 14; D. 60 ¶ 14.  Krishnan also claims that Blueprint failed to pay him within six days of a pay period on multiple occasions.  D. 46 ¶ 11; D. 51 ¶ 11; D. 54 ¶ 11; D. 60 ¶ 11.

Blueprint engaged Genesis Eldercare Physician Services LLC ("Genesis") and Doctors' Management Service Inc. ("DMS") to collect insurance and patient payments associated with services performed by Blueprint's providers, including Krishnan.  D. 46 ¶¶ 15, 18; D. 51 ¶¶ 15, 18; D. 54 ¶¶ 15, 18; D. 60 ¶¶ 15, 18.  Krishnan contends that Blueprint received a total of at least $126,038.25 in fees from Genesis.  D. 46 ¶ 16; D. 54 ¶ 16.  Blueprint denies whether the amount reported by Genesis comports with the actual amount received during Krishnan's employment.  D. 51 ¶ 16; D. 60 ¶ 16.  Krishnan also contends that Blueprint received approximately $89,838.14 in fees from DMS related to services Krishan performed while employed with Blueprint.  D. 46 ¶ 19; D. 54 ¶ 19.  Blueprint denies whether the amount reported by DNS comports with the actual amount received during Krishnan's employment as well.  D. 51 ¶ 19; D. 60 ¶ 19.

The Agreement between Krishnan and Blueprint states, in relevant part, that:

> [Blueprint] or [Blueprint's] designated billing company or other entity shall be entitled to bill and collect for Services rendered by [Krishnan] pursuant to this Agreement free and clear of any claim by [Krishnan].  [Krishnan] agrees to do everything required to assist in the billing and collection of fees for [Krishnan's] Services. [Krishnan] assigns all rights to those fees to [Blueprint] and [Krishnan] at a 60% distribution to [Krishnan] and the remainder to [Blueprint].

D. 46 ¶ 7; D. 51 ¶ 7; D. 54 ¶ 7; D. 60 ¶ 7; D. 46-4 at 3.

It also states, as pertains to service compensation, that "[i]n consideration for assigning Professional's professional fees to Company and in consideration for the Services, the Professional shall be paid the amounts stated in Addendum 1."  D. 46-4 at 3.  The Agreement furthers that:

> The amount of $150,000 which Professional shall be eligible to receive for Professionals PRN services on behalf of the Company has been predetermined and mutually agreed upon by Company and Professional.  This base compensation is a guaranteed performance base and shall be reevaluated every quarter and renewed where in Professional is able to maintain predetermined profit metrics.

Id. at 10.

Krishnan contends that Blueprint did not tender him 60 percent of the foregoing fees, as he alleges was required by the Employment Agreement.  D. 46 ¶ 20; D. 54 ¶ 20.  Blueprint alleges that Krishnan opted for a secure salary rather than having paid wages based upon a percentage of his fees.  D. 51 ¶ 20; D. 60 ¶ 20.  Krishnan claims that by failing to pay him his earned wages and passing on business expenses to him, Defendants failed to pay him the full amount of his earned wages when the same became due and payable, in violation of the Weekly Payment of Wages Act, Mass. Gen. L. c. 149 §§ 148, 150 (Count I), D. 24 ¶¶ 33-35, and alternatively, claims Defendants' actions violated the New Hampshire Payment of Wages Act, N.H. R.S.A. § 275:43 (Count II), id. ¶¶ 36-46.  Krishnan additionally claims that Defendants are in breach of contract (Count III), in breach of the covenant of good faith and fair dealing (Count IV) and were unjustly enriched (Count V).  Id. ¶¶ 47-60.  Defendants have asserted counterclaims against Krishnan for defamation (Counterclaim I) and tortious interference with a contract (Counterclaim II).  D. 26 at 9-10.  They further allege that Krishnan is in violation of the Trade Secret Violation RSA 350:B (Counterclaim III) and in breach of contract (Counterclaim V).  Id. at 10-11.  They seek a temporary restraining order against Krishnan, thereby prohibiting Krishnan from contacting their customers or clients or providing healthcare services to their customers or clients (Counterclaim IV).  Id. at 11-13.

## IV.    Procedural History

Krishnan instituted this action on June 12, 2019 in Essex  Superior Court.  D. 1.  Defendants removed the action to this Court.   Id.   Krishnan filed an amended complaint, D. 24, and in its answer to same, Defendants filed counterclaims, D. 26.  Krishnan has moved for partial summary judgment as to liability on Count I (MA Wage Act claim), or in the alternative, on Count II (NH Wage Act claim) and also moves for summary judgment on Defendants' counterclaims.  D. 44.

4

Defendants have moved for summary judgment as to both Krishnan's claims and its counterclaims. D. 47.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 65.

## V.   Discussion

### A.   <u>Choice of Law</u>

As an initial matter, the parties dispute whether Massachusetts law governs the claims here (as Krishnan asserts) or if New Hampshire law does (as Defendants contend).  In a diversity action, the choice-of-law rules that apply are those of the forum state, in this case, Massachusetts.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  Massachusetts applies a "functional choice of law approach," by which courts consider the following factors: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  <u>Bushkin Assocs. v. Raytheon Co.</u>, 393 Mass. 622, 632 (1985) (quoting Restatement (Second) of Conflict of Laws, § 6(2)).  As a general rule, Massachusetts courts will give effect to a contractual choice-of-law clause.  <u>See</u> <u>Morris v. Watsco, Inc.</u>, 385 Mass. 672, 674 (1982) (explaining that "Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship").

Here, the Agreement includes a provision that provides "[t]he law of the state(s) in which Facilities are located shall govern the rights and obligations under this Agreement."  D. 54-4 at 7. The Agreement defines "facilities" as "short-term and long-term acute care hospitals, skilled

nursing facilities, nursing homes, assisted living facilities, adult care homes, hospices and other related settings." Id. at 11. Defendants argue that Krishnan, a New Hampshire resident, serviced a Blueprint facility in New Hampshire, and accordingly, New Hampshire law should apply, D. 58 at 4, whereas Krishnan argues the provision in the Agreement is irrelevant as the provision does not specify which facility and applies to contractual claims rather than the statutory wage claims he presses here, D. 53 at 7; see Ruggiero v. Am. United Life Ins. Co., 137 F. Supp. 3d 104, 125 n.3 (D. Mass. 2015) (noting that "[a]lthough the contract contains a choice of law provision stating that '[t]his agreement shall be interpreted in accordance with the laws of the State of Indiana,' such a provision does not apply to statutory—as distinct from contractual—claims"). As the Agreement fails to specify which facility dictates the choice of law, i.e., the facility in which Krishnan performed, the choice of law provision in the Agreement is not dispositive. Accordingly, the Court will now engage in a choice-of-law analysis.

An initial step in a choice-of-law analysis is "to determine whether there is an actual conflict between the substantive law of the interested jurisdictions." Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006). Turning first to Krishnan's wage law claims, the parties agree that Defendants have similar obligations under Massachusetts and New Hampshire law to pay employees wages in a timely manner. See Mass. Gen. L. c. 149, § 148; N.H. R.S.A. § 275:44; D. 45 at 6; D. 48 at 11. The Wage Act "requires timely payment of wages earned by an employee," Hoffman v. Thras.io Inc., No. 20-cv-12224-PBS, 2021 WL 1858688, at *4 (D. Mass. May 10, 2021), and similarly, the New Hampshire statute states that "[e]very employer shall pay all wages due to employees within 8 days . . . after expiration of the week in which the work is performed . . . ." Gennell v. FedEx Corp., No. 05-cv-145-PB, 2014 WL 1091148, at *2 n.2 (D.N.H. Mar. 19, 2014) (citing N.H. R.S.A. § 275:43). The damages that would result from

6

Defendants' alleged violations, however, differ depending on which law applies.   Under Massachusetts law, an employee who prevails under a claim for non-payment of wages is entitled to treble damages, Mass. Gen. L. c. 149, whereas under New Hampshire law, employees are entitled to liquidated damages "if an employer willfully and without good cause" fails to pay the employee wages as required, in which case "such employer shall be additionally liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day except Sunday and legal holidays upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller," N.H. R.S.A. § 275:44.   Under Massachusetts law, a prevailing party is entitled to attorneys' fees, Calixto v. Coughlin, 481 Mass. 157, 160 (2018) (noting that "the Wage Act, with limited exceptions . . . awards mandatory treble damages and attorney's fees to a successful plaintiff"), but the same is not true under New Hampshire law, N.H. R.S.A. § 275:44.

Defendants contend that "[a] difference in available damages under the law of respective jurisdictions, including the availability of punitive damages and attorneys' fees is an actual conflict requirement determination of the applicable law." D. 58 at 5 (citing Alharbi v. Theblaze, Inc., 199 F. Supp. 3d 334, 360 (D. Mass. 2016)).   In Alharbi, a defamation case, this Court concluded that because Massachusetts law "proscribe[d] the recovery of punitive damages for defamation," whereas "Texas law allow[ed] the award of punitive damages against defamation defendants 'based upon the same rules governing punitive damage awards for all torts . . .'" that there was an actual conflict for choice of law purposes.   Alharbi, 199 F. Supp. 3d at 360.   Even assuming there is a conflict of law, however, the Court concludes New Hampshire law should apply.

7

1.    *Wage Law Claims*

"Massachusetts state courts apply 'a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole,'" <u>Reicher v. Berkshire Life Ins. Co. of Am.</u>, 360 F.3d 1, 5 (1st Cir. 2004) (quoting <u>Bushkin Assocs., Inc.</u>, 393 Mass. at 632), and look to the Restatement (Second) of Conflict of Laws (1971) as an "obvious source of guidance," <u>Bushkin Assocs., Inc.</u>, 393 Mass. at 631–32.   The Restatement sets forth factors relevant to the choice of the applicable rule of law in the absence of a contractual choice-of-law clause or statutory guidance from the forum state.   Under the functional approach, "the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation."   <u>Hendricks & Assocs., Inc. v. Daewoo Corp.</u>, 923 F.2d 209, 212 n.3 (1st Cir. 1991).

Here, Krishnan claims that Defendants failed to pay him wages in violation of Mass. Gen. L. c. 149, § 148, or alternatively, N.H. R.S.A. §§ 275:43, 44, 53.   D. 24 ¶¶ 33-35, 36-46. Considering the Restatement factors as a holistic matter, in the absence of a clear choice-of-law clause, the Court recognizes that both Massachusetts and New Hampshire may have an interest in this case.   Blueprint is a Massachusetts corporation, D. 46 ¶ 1; D. 51 ¶ 1; D. 54 ¶ 1; D. 60 ¶ 1, and the Commonwealth has "an interest in regulating the behavior of Massachusetts corporations outside of Massachusetts," <u>Value Partners S.A. v. Bain & Co.</u>, 245 F. Supp. 2d 269, 277 (D. Mass. 2003).   New Hampshire, however, has a more direct interest and substantial relationship to the transaction involved.   Krishnan is a New Hampshire resident, licensed to practice medicine exclusively in the state of New Hampshire.   D. 24 ¶ 1; D. 50 at 12.   He solely serviced Defendants' facilities in New Hampshire and accepted wages for work performed in New Hampshire—without paying Massachusetts state taxes for said wages.   D. 49-1 ¶¶ 8, 14-16; <u>see</u> <u>DaSilva v. Border</u>

Transfer of MA, Inc., 296 F. Supp. 3d 389, 400 (D. Mass. 2017) (concluding that because plaintiff's relationship with defendants "centered on the [Massachusetts] facility, where they met every morning to get instructions," that Massachusetts wage law applied).  As the present litigation hinges on Krishnan's employment in New Hampshire, and the hours worked and payment received in New Hampshire, New Hampshire has the more significant relationship to the actions alleged in Krishnan's complaint, and this Court will rely on the substantive law of New Hampshire to determine whether Defendants' motion for summary judgment may be allowed as to Krishnan's wage law claims.

### 2.    Contract Claims

Similarly, this Court will apply New Hampshire law to Krishnan's breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), and unjust enrichment (Count V) claims, D. 24 ¶¶ 47-60, as well as Defendant's breach of contract counterclaim (Counterclaim V).  As a general rule, Massachusetts courts will give effect to a choice-of-law clause included in the contract itself.  Roll Sys., Inc. v. Shupe, No. 97-cv-12689, 1998 WL 1785455, at *2 (D. Mass. Jan. 22, 1998); see Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982). Here, however, the choice-of-law provision in the Agreement does not dictate whether Massachusetts or New Hampshire is the selected forum, merely stating that "[t]he law of the state(s) in which [f]acilities are located shall govern the rights and obligations under this Agreement."  D. 58-1 at 16.  Accordingly, as noted above, the choice of law provision in the Agreement is not dispositive.

For contract claims, "[i]n identifying the State with the most significant relationship to the transaction and the parties [under Massachusetts law], [courts] evaluate: '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the

location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.'" Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec., 450 F. Supp. 3d 20, 31 (D. Mass. 2020) (quoting Oxford Glob. Res., LLC v. Hernandez, 480 Mass. 462, 466 (2018)).  It is unclear from the record before this Court whether New Hampshire is the place of contracting or negotiation, although this appears likely given Krishnan's New Hampshire residency and license to practice medicine specifically in New Hampshire. D. 24 ¶ 1; D. 50 at 12.  It is clear, however, that New Hampshire is the Agreement's "place of performance," the "location of the subject matter of the contract," and a place of business for both parties, Fine, 450 F. Supp. 3d at 31, as the Agreement pertains explicitly to Krishnan's work in Blueprint's New Hampshire facility.  See D. 46-4 (employment agreement for "moonlighting in [Blueprint's] New Hampshire practice").  Accordingly, the Court relies upon the substantive law of New Hampshire for Krishnan and Defendants' contract law claims.

**B.    Non-Payment of Wages in Violation of N.H. R.S.A. §§ 275:43, 44, 53 (Count II)**

*1.    Generated Fees*

Krishnan alleges that Defendants failed to pay him 60 percent of the fees he generated, in accordance with his Employment Agreement.  D. 24 ¶ 11.  Article 6 of the Agreement states that, "[i]n consideration for assigning Professional's professional fees to Company and in consideration for the Services, Professional shall be paid the amounts stated in Addendum 1," D. 54-4 § 6, which provides for base compensation of $150,000.  D. 54-4 at 10.  The Agreement provides, in its "Billing and Collections" clause, that Blueprint or its designated billing company is "entitled to bill and collect for Service rendered by [Krishnan] pursuant to this Agreement free and clear of any claim by [Krishnan]." D. 54-4 § 10.  The clause also notes that Krishnan "assigns all rights to those fees to [Blueprint] and [Krishnan] at a 60% distribution to [Krishnan] and the remainder to

[Blueprint]." Id. Krishnan argues that despite the Agreement's "Service Compensation" clause that "[i]n consideration for assigning [Krishnan's] professional fees to [Blueprint] and in consideration for the Services, [Krishnan] shall be paid the amounts stated in Addendum 1," id. § 6, Section 10 requires Krishnan be assigned 60% of the fees generated from his work at Blueprint, id. § 10. Defendants contend that the provision "merely allows for the designation and collection of receivables by Blueprint" relative to Krishnan's services, and that "[a]ny nexus between that provision and [Krishnan's] own compensation must be found in Article 6 and/or Addendum 1." D. 48 at 14.

Krishnan argues that the Agreement is ambiguous, and as it was drafted by Defendants, the interpretation should be construed against them. D. 53 at 14-15. A contract is considered ambiguous only when the language "is reasonably prone to different interpretations." Fowler v. Boise Cascade Corp., 948 F.2d 49, 54 (1st Cir. 1991). In other words, contract language which "is susceptible to differing, but nonetheless plausible, constructions . . . is ambiguous." Alison H. v. Byard, 163 F.3d 2, 6 (1st Cir. 1998) (FDIC v. Singh, 977 F.2d 18, 22 (1st Cir. 1992); see, e.g., F.D.I.C. v. O'Flahaven, 857 F. Supp. 154, 159 (D.N.H. 1994) (denying motion for summary judgment on grounds that contract was ambiguous and "subject to genuine debate"). The Court does not agree that the Agreement at issue is susceptible to varying interpretations with respect to Krishnan's salary. The Agreement clearly states in its "Service Compensation" clause that Krishnan assigned his professional fees to Blueprint, and in consideration thereof, is being paid the $150,000 base salary delineated in the Addendum. D. 54-4. Krishnan asks the Court to read the separate "Billing and Collections" clause as a basis for additional wages, but the language is clear. See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 11 (1st Cir. 2019) (recognizing that "a cardinal principle of contract construction" is that "a document should be read

to give effect to all its provisions and to render them consistent with each other" (internal quotation marks omitted) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)). Accordingly, the Court concludes that Krishnan's salary was comprised of his $150,000 and not 60 percent of fees.  There is no dispute that in addition to salary Krishnan was entitled to PTO so the Court will turn now to whether Defendants failed to pay those amounts as statutorily required.

    2.    *Salary Delays and Amounts*

    Under both Massachusetts and New Hampshire law, Defendants are obligated to pay Krishnan all his wages in a timely manner.  Mass. Gen. L. c. 149, § 148; N.H. R.S.A. § 275:44. The New Hampshire Payment of Wages Act specifically mandates that employers pay employees wages within eight days after the end of the pay period in which the work was performed.  N. H. R.S.A. § 275:43(I).  When an employee is terminated, the employer must additionally pay all of the employee's wages, including vacation pay, within seventy-two hours.  N.H. R.S.A. § 275:44. In New Hampshire, "wages" include "compensation, including hourly health and welfare, and pension fund contributions required pursuant to a health and welfare trust agreement, pension fund trust agreement, collective bargaining agreement, or other agreement adopted for the benefit of an employee and agreed to by his employer, for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation."  N.H. R.S.A. § 275:42(III).  "Vacation pay, severance pay, personal days, holiday pay, sick pay, and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42, III, when due."  N.H. R.S.A. 275:43(V).

    It is not in dispute that Krishnan qualified as an employee under the statute and that his compensation constituted a wage.  Rather, the parties dispute whether Krishnan was paid all his

wages and whether these wages were paid in a timely manner.  Krishnan asserts that Blueprint's payroll records show that Krishnan was not consistently paid his earned salary on time.  See D. 54-5.  In one instance, Blueprint paid Krishnan his salary for the December 1, 2018 to December 15, 2018 period on December 14, 2018, and did not pay Krishnan again until February 15, 2019, although Krishnan had worked the entirety of the period.  Id. at 5-6; D. 54-3 at ¶ 8.  Majekodunmi testifies that "there were" financial issues at Blueprint at this time.  D. 46-2 at 10.  Krishnan testifies that he was not paid within six days of the pay period and within eight days of the pay period on several occasions.  D. 54-3 ¶¶ 7-8; see, e.g., D. 46-5 at 10.  New Hampshire law states that "if an employer willfully and without good cause fails to pay an employee wages . . . , such employer shall be additionally liable to the employee for liquidated damages . . . ."  N.H. R.S.A. 275:44(IV).  As Krishnan has presented no evidence to support that his wages were retained willfully or without good cause, there is no genuine dispute as to whether Blueprint should be found "additionally liable."  Id.  There may be a genuine dispute, however, as to whether Krishnan would be owed interest on such late payments.  See Dobin v. CIOview Corp., No. 2001-cv-00108, 2003 WL 22454602, at *8 (Mass. Super. Oct. 29, 2003) (awarding plaintiff "the foregone interest she suffered from the delay in [her employer] paying her monthly wages, trebled").

Additionally, Krishnan claims that he was not paid his full salary over the course of his employment from October 1, 2018 to May 24, 2019, D. 53 at 13, and that he is owed a PTO balance from Defendants, id. at 13-14; D. 46 ¶¶ 8-9; D. 54 ¶¶ 8-9, even considering Defendants' assertion about the amount he would have been owed.  D. 49 ¶ 34.  The Court agrees that the disparity in estimated salary amounts, however marginal, indicates that Krishnan's claims of having not been paid in full should survive the summary judgment motion.

Defendants dispute the amount PTO Krishnan is owed, with Krishnan contending he is due four weeks of PTO and Defendants claiming he is due only two weeks of PTO.  D. 54 ¶¶ 8-9; D. 60 ¶ 8-9.  The parties do not dispute that Krishnan has only been paid for one week of PTO.  D. 54 ¶ 13; D. 60 ¶ 13.  Krishnan argues that even if Defendants are correct, and he is only due two weeks of PTO, that Krishnan would have accrued at least eight days of PTO and was only paid for five.  D. 53 at 14.  Defendants counter that Krishnan has failed to specify the amount of potential damages.  D. 48 at 16.  Defendants fail, however, to support their proposition that this is required, citing cases that rest on the damages issue, see Fitz v. Coutinho, 136 N.H. 721(1993) (vacating a lost profits assessment and reward for an award of nominal damages because plaintiff failed to present reasonably certain proof of the amount of lost profits), which is separate from the issue of whether Krishnan must specify the amount he is due at this stage and to what extent this determinable amount must be calculated.  Here, there remains no genuine issue of material fact as to whether Krishnan is owed PTO, but rather, solely as to how much, for which a specific amount is not required to support this claim.  Lawless v. Steward Health Care System, LLC, 894 F.3d 9, 22 (1st Cir. 2018) (noting that "an employee who does not receive her due wages [when mandated by the Wage Act] – even an employee who is paid in full a day later – suffers a cognizable injury within the purview of the statute").  Accordingly, Defendants' motion for summary judgment as to Count II is denied.

### 3. *Res Judicata*

Defendants argue, alternatively, that Krishnan is estopped from pursuing his wage claims, because he filed a wage complaint with the New Hampshire Department of Labor ("NHDOL"). D. 50 at 17.  New Hampshire law "precludes a party from re-litigating an issue previously decided on the merits when the current party had a full and fair opportunity to be heard, or was in privity

with a party who had such an opportunity." Bryant v. Noether, 163 F. Supp. 2d 98, 107 (D.N.H. 2001); see Sutliffe v. Epping Sch. Dist., 627 F. Supp. 2d 41, 48 (D.N.H. 2008), aff'd, 584 F.3d 314 (1st Cir. 2009). As noted in Defendants' own papers, however, NHDOL conducted an in-person meeting with Defendants, which Krishnan did not attend, and no formal hearing was ever conducted. D. 50 at 17-18. Moreover, Defendants fail to purport that the issues addressed by the NHDOL were "the same" as those in the current cause of action. See Barry v. New Hampshire Department of Health and Human Services, 170 N.H. 364, 367 (2017) (recognizing that "[t]he party asserting [collateral] estoppel bears the burden of proving that it applies"). Without more, *res judicata* does not apply.

C.   **Breach of Contract (Count III), Breach of the Covenant of Good Faith and Fair Dealing (Count IV) and Unjust Enrichment (Count V)**

Defendants argue that Krishnan's breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment claims fail because Krishnan has failed to specify damages. To succeed on a breach of contract claim under New Hampshire law, the plaintiff must show: "(1) that a valid, binding contract existed between the parties, and (2) that [the defendant] breached the terms of the contract." Sears Roebuck & Co. v. W/S Lebanon LLC, No. 14-cv-422-JL, 2017 WL 3913218, at *2 (D.N.H. Sept. 6, 2017) (quoting Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012)). "The implied covenant of good faith and fair dealing between parties to a contract provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001) (internal quotation marks and citations omitted); Crowley v. F.D.I.C., 849 F. Supp. 124, 125 (D.N.H. 1994) (noting that "every contract contains an implied covenant of good faith performance and fair dealing" (internal quotation marks omitted) (quoting Renovest Co. v. Hodges Dev. Corp., 135 N.H. 72, 81 (1991)). "A plaintiff is entitled to restitution

for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." Gen. Insulation Co. v. Eckman Const., 159 N.H. 601, 611 (2010) (quoting Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., 145 N.H. 158, 163 (2000)). "The party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain, and unjust enrichment generally does not form an independent basis for a cause of action." Id. (quoting 42 C.J.S. Implied Contracts § 10, at 17 (2007)). "[D]amages in unjust enrichment are measured by the value of what was inequitably retained." Gen. Insulation Co., 159 N.H. at 612 (quoting Paffhausen v. Balano, 708 A.2d 269, 271 (Me. 1998)).

Defendants' argument as to whether their motion for summary judgment as to Krishnan's breach of contract, breach of the implied covenant of good faith and unjust enrichment claims should be granted, beyond arguing that these claims are "repackaged wage / expense claims," rests upon Krishnan's alleged lack of specificity as to damages. D. 48 at 17. Under New Hampshire law, however, damages "need not be proven with absolute certainty" at this stage. Dunlop v. Daigle, 122 N.H. 295, 300 (1982). Rather, "the plaintiff must produce sufficient data to demonstrate that profits are reasonably certain to result." Id. Here, Krishnan has presented evidence to support his assertion that Defendants failed to pay him salary, fees, expenses and other wages, as demonstrated by his earning statements. See D. 46-5. As aforementioned, Blueprint paid Krishnan his salary for the December 1, 2018 to December 15, 2018 period on December 14, 2018, and did not pay Krishnan again until February 15, 2019, although Krishnan had worked the entirety of the period. Id. at 5-6; D. 54-3 at ¶ 8. Krishnan also testifies that he was not paid within six days of the pay period and within eight days of the pay period on several occasions, D. 54-3 ¶¶ 7-8; see, e.g., D. 46-5 at 10, which Defendants do not dispute, D. 51 ¶ 12, and claims he was not

paid his full salary over the course of his employment from October 1, 2018 to May 24, 2019, D. 53 at 13. Even considering Defendants' assertion about what Krishnan was paid and would have been owed, D. 49 ¶ 34, the record presents a genuine issue of material fact as to whether Defendants breached Krishnan's employment agreement, which required specified wages, D. 46-4 at 10, whether Defendants thereby breached the covenant of good faith and fair dealing and whether Defendants were unjustly enriched by whatever amount they allegedly retained that was owed to Krishnan, see Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 211 (2009) (noting that "[u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract"). Accordingly, the Court denies Defendants' motion for summary judgment as to Counts III, IV and V.

### D.     Defamation (Counterclaim I)

Defendants assert a counterclaim for defamation against Krishnan. D. 26 ¶¶ 6-11. Defendants claim that Krishnan made false statements to individuals, professionals and business partners about Defendants that were untrue and that resulted in Defendants suffering harm to their professional reputations. D. 26 at 8. Section 145 of the Restatement (Second) of Conflict of Laws "provides the general principle 'applicable to all torts and to all issues in tort.'" Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 646 (1994). The section states that:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in [Restatement (Second) of Conflict of Laws] s 6
>
> (2) Contacts to be taken into account in applying the principles of s 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

Given Krishnan's residence and employment in New Hampshire when statements were made, New Hampshire has the "most significant relationship to the occurrence," being "the place where the injury occurred," "where the conduct causing the injury occurred," and given that Krishnan solely worked in Defendant's New Hampshire facility, "where the relationship [ ] between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971). New Hampshire law applies.

Under New Hampshire law, defamation requires proof that a defendant "failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Collins v. Univ. of New Hampshire, 746 F. Supp. 2d 358, 372 (D.N.H. 2010), aff'd, 664 F.3d 8 (1st Cir. 2011) (quoting Indep. Mech. Contractors v. Gordon T. Burke & Sons, 138 N.H. 110, 118 (1993)). "To determine whether a statement is defamatory, a court must read the statement 'in the context of the publication taken as a whole.'" Id. at 373 (quoting Duchesnaye v. Munro Enters., 125 N.H. 244, 249 (1984)). "In such context, a statement in the form of an opinion may be read to imply defamatory facts, and it is actionable if it is actually understood that way." Id. "A statement is not actionable if it is substantially true." Simpkins v. Snow, 139 N.H. 735, 740 (1995). A qualified privilege exists, however, "if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a

belief, founded on reasonable grounds of its truth,' provided that the statements are not made with actual malice."  Id.

Statements that damage a business reputation are actionable without proof of economic loss.  MacDonald v. Jacobs, 171 N.H. 668, 674 (2019) (noting that "[i]t is well established in New Hampshire that no proof of specific damages is required '[w]hen . . . the jury could find that the defamatory publication charged the plaintiff with a crime or with activities which would tend to injure him in his trade or business, commonly called libel *per se*'") (quoting Chagnon v. Union Leader Co., 103 N.H. 426, 441 (1961)).  Rather, the plaintiff "can recover as general damages all damages which would normally result from such a defamation, such as harm to his reputation."  Chagnon, 103 N.H. at 441.  Here, Majekodunmi includes in his interrogatory response that Krishnan "made untruthful statements about [Majekodunmi] and the Defendants, including statements about [their] not being able to service customers."  D. 51-5 at 6.  The response states that Krishnan disparaged the Defendants during Krishnan's alleged "marketing attempts" with staff members at Ridgewood Center Nursing Home ("Ridgewood"), in which Krishnan allegedly informed staff members he was planning to help open Vantage Healthcare.  Id.  Defendants claim Krishnan said Majekodunmi "wasn't the real deal" and "could not deliver services."  Id. at 7.  Defendants claim further that Krishnan, through these alleged statements, falsely accused them of not being able to properly service their customers, and 'published' this statement by speaking on the matter to Ridgewood staff members, specifically Blueprint clients.  See Collins, 746 F. Supp. 2d at 373.  Although Defendants do not allege that they suffered an economic harm as a result of these statements, prejudice can be inferred.  See Ravnikar v. Bogojavlensky, 438 Mass. 627, 631 (2003) (noting that "[a] statement falls within [the] exception to the economic harm requirement if it alleges that the [party] lacks a necessary characteristic of the profession"); see Restatement

(Second) of Torts at § 573 (stating that "[o]ne who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm"). A false claim that Majekodunmi, a medical professional, is unable to deliver on services and is not 'the real deal' creates an inference that Majekodunmi lacks a necessary professional characteristic. See, e.g., Bogojavlensky, 438 Mass. at 631 (noting that "[p]hysicians compete for patients just as businesspeople compete for customers, and a doctor who cannot offer stable and reliable care to [his] patients faces the same competitive disadvantage as any other businessperson"). Accordingly, Defendants' assertion that Krishnan's alleged statements that Majekodunmi "wasn't the real deal" and "could not deliver services," D. 51-5 at 6-7, as well as his alleged disparaging of Defendants more broadly that they could not properly service their customers, id., is adequate to state a defamation claim, Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007) (noting that "[i]f defamation is established and no privilege applies, the plaintiff may seek damages for harm to his or her reputation").

The sole evidence Defendants present that Krishnan made these statements, however, is an interrogatory answer in which Majekodunmi claims Ridgewood staff told him that Krishnan made these statements. D. 51-5 at 6-7. To support a motion for summary judgment, the facts upon which a movant must be presented in a form "that would be admissible in evidence" at trial." Fed. R. Civ. P. 56(c)(2). Here, the Ridgewood's staff's comments to Majekodunmi are hearsay even though Krishnan's alleged statements would have "independent legal significance" as the alleged defamatory action. Simpkins, 139 N.H. at 737. Here, however, Majekodunmi was not privy to Krishnan's statements, but only what unidentified Ridgewood staff relayed. "Unless [those staff member's] statements were true, they would not tend to prove that the defamation occurred," and

accordingly, "they [are] out-of-court statements offered to prove the truth of the matter asserted in the statements and constitute[ ] hearsay."  Id.

Accordingly, although the alleged statements are actionable without proof of economic damage, without admissible evidence that the statements were in fact made or the names of any witnesses who can provide direct knowledge as to these statements, the Court grants Krishnan's motion for summary judgment on this claim.  See Darbouze v. Toumpas, No. 10-cv-252-LM, 2011 WL 6300702, at *17 (D.N.H. Dec. 16, 2011) (granting motion for summary judgment where plaintiff produced "no competent evidence" to support defamation claim, having only provided "inadmissible hearsay"); Bertram v. Viglas, No. 19-cv-11298-LTS, 2020 WL 1892187, at *11 (D. Mass. Apr. 16, 2020) (noting that plaintiff's "offer of proof to substantiate [the] alleged defamatory statement is inadmissible hearsay and, as such, is entirely deficient to create a genuine issue for trial").

### E.    Tortious Interference with Contract (Counterclaim II)

Defendants also claim tortious interference against Krishnan, claiming that he made the aforementioned false statements in an effort to poach Blueprint's clients and operate a "competing business."  D. 26 ¶¶ 12-17; D. 51-5 at 8.  As with Defendants' defamation counterclaim, Krishnan's allegedly untrue statements were made in New Hampshire, D. 1 ¶¶ 12-17, and pertained specifically to Defendants' New Hampshire facility.  Accordingly, New Hampshire again has the "most significant relationship" to the alleged cause of action, as the state is "the place where the injury occurred," "where the conduct causing the injury occurred," and "where the relationship [ ] between the parties is centered."  Restatement (Second) of Conflict of Laws § 145 (1971).

Under New Hampshire law, the elements for a tortious interference with contractual relations claim are "that (1) the plaintiff had an economic relationship with a third party; (2) the

defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." Soltani v. Smith, 812 F. Supp. 1280, 1296 (D.N.H. 1993) (emphasis omitted) (internal quotation marks omitted) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46 (1987)). "Mere interference, in itself, is legally insufficient to state a claim," and "'[o]nly improper interference is deemed tortious in New Hampshire.'" Boyd v. Wells Fargo Bank, N.A., No. 18-cv-253-JL, 2018 WL 2272781, at *2 (D.N.H. May 17, 2018) (internal quotation marks omitted) (quoting Kilty v. Worth Dev. Corp., 184 Fed. Appx. 17, 19 (1st Cir. 2006) (quoting Roberts v. Gen. Motors Corp., 138 N.H. 532, 540 (1994)). The "improper motive element [is] met when a defendant exhibits 'actual malice' or 'a spiteful, malignant purpose, unrelated to [a] legitimate corporate interest.'" Hamann v. Carpenter, 937 F.3d 86, 90 (1st Cir. 2019) (quoting Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 43 (1st Cir. 2011) (quoting King v. Driscoll, 418 Mass. 576, 638 (1994)).

Here, Krishnan's testimony that he did not attempt to poach Blueprint's clients or operate a competing business is undisputed. D. 46 ¶¶ 22-23; D. 46-3 ¶ 12. Defendants state in an interrogatory response that they were informed by Ridgewood staff that Krishnan told staff members "that he planned to help open Vantage Healthcare," and "openly marketed to Ridgewood during staff meetings," during the winter and spring of 2019. D. 51-5 at 6-7. Defendants also state that Krishnan contacted the Vice President of Operations at Genesis and told him that Krishnan "was going to help start Vantage Healthcare and that the Defendants could not support the services required of Genesis." Id. at 7. Defendants claim further in their interrogatory response that Krishnan allegedly assisted Jamie Elliot ("Elliot") in poaching Blueprint customers and revealed confidential information to her. D. 51-5 at 8. Defendants fail to include any basis or evidence for these allegations and the interrogatory response fails to note how Defendants learned of these

alleged acts.  Id.  Beyond this hearsay evidence, Defendants present no evidence that Krishnan engaged in such alleged interference.  See Evergreen Partnering Grp., Inc. v. Pactiv Corp., 832 F.3d 1, 12 (1st Cir. 2016) (noting that "'hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted") (quoting Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011)).  Accordingly, the Court allows the motion for partial summary judgment to Krishnan as to Counterclaim II.

### F.    Trade Secret Claim (Counterclaim III)

Defendants additionally claim that Krishnan committed trade secret violations pursuant to the New Hampshire Uniform Trade Secrets Act ("NHUTSA").  Specifically, Defendants claim Krishnan obtained customer/client lists from Defendants, while employed at Blueprint, and launched a competitive business using said list.  D. 26 at 10-11.  The NHUTSA defines "misappropriation" as "use of a trade secret of another without express or implied consent by a person who," at that time, "knew or had reason to know that his knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it."  N.H. R.S.A. § 350–B:1(II).  A trade secret is defined as information that "[d]erives independent economic value . . . from not being generally known" and that "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Id. § 350–B:1(IV).  "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy."  Id. § 350–B:1(I).  "[A] company cannot sustain a claim under the Act by 'effectively asserting that all information in or about its [product] is a trade secret.'"  Beane v. Beane, 856 F. Supp. 2d 280, 305 (D.N.H. 2012) (quoting IDX Sys. Corp. v. Epic Sys. Corp., 285 F.3d 581, 583 (7th Cir. 2002)).  Furthermore, the statute "does not prohibit the disclosure of trade secrets under all circumstances; rather, it provides

remedies for the '[a]ctual or threatened misappropriation' of trade secrets." CaremarkPCS Health, LLC v. New Hampshire Dep't of Admin. Servs., 167 N.H. 583, 587 (2015).

Here, Defendants fail to explain how the customer/client list fits the trade secret definition and have presented no admissible evidence that Krishnan stole said list.  See generally, D. 51-5. Even considering the interrogatories proffered by Defendants, Defendants state that Krishnan was "put into a position of trust in which he had access [to] some of the Defendants' customers," and "may also have obtained access to the Defendants' contracts, terms of service."  D. 51-5 at 9. Defendants state in their response that Krishnan "clearly obtained the Defendants' staffing methods and business operations," and "attempted to poach and did poach customers of the Defendants on behalf of a competitive business, thereby misappropriating the Defendants' trade secrets."  Id.  Defendants provide no basis for these allegations and do not explain or show how they know Krishnan engaged in misappropriation of their alleged trade secrets.   Moreover, Defendants provide no evidence to support their claim that the allegedly stolen information was "subject of efforts that are reasonable under the circumstances to maintain its secrecy," or that Krishnan used "improper means" to acquire such information.   N.H. R.S.A. § 350–B:1(IV). Accordingly, the Court grants summary judgment to Krishnan as to Counterclaim III.

### G.   Temporary Restraining Order (Counterclaim IV)

Defendants claim that Krishnan obtained a customer/client list from Defendants while at Blueprint and launched a competitive business, for which, Krishnan allegedly reached out to Defendants' customers in contravention of N.H. R.S.A. § 350-B.  D. 26 at 10-11.  To determine whether to issue a temporary restraining order, New Hampshire courts apply the familiar, four-factor test for injunctive relief.  Nw. Bypass Grp. v. U.S. Army Corps of Engineers, 453 F. Supp. 2d 333, 337 (D.N.H. 2006) (citing Largess v. Supreme Judicial Court for Mass., 317 F. Supp. 2d

77, 81 (D. Mass. 2004)).  The party seeking relief bears the burden of demonstrating that these factors weigh in its favor but "the authority of a judge to grant such injunctive relief should be used 'sparingly.'"  Nw. Bypass Grp., 453 F. Supp. 2d at 338 (quoting Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981)).  As noted by the Court, Defendants present no evidence that Krishnan stole a customer/client list and are thereby unlikely to succeed on the merits of this claim, a requisite element for granting injunctive relief.  Accordingly, the Court denies Defendants' request for a temporary restraining order and grants summary judgment to Krishnan as to this claim.

## H.     **Breach of Contract (Counterclaim V)**

Lastly, Defendants allege Krishnan violated the terms of the Agreement by utilizing Defendants' customer/client list to market to Defendants' clients.  Specifically, Defendants point to their interrogatory response as evidentiary support for their allegation that Krishnan attempted to persuade Defendants' customers to switch to Elliot's business "by revealing key operational items of the Defendants to the customers."  D. 51-5 at 10.  The Agreement contains a confidentiality and non-disclosure clause. D. 46-4 at 6-7.  Defendants state that Krishnan "devised a plan with Elliot prior to his termination in which he planned to start a competitive business" and "utilized the Defendants' customer list" to do so, thereby revealing "professional staffing information, organizational structure, and the Defendants' marketing strategy."  D. 51-5 at 11. Defendants state themselves that "much of the Defendants' communications were with third-parties" to obtain this information and that they do not know the exact dates and times of Krishnan's alleged misconduct as a result.  Id.  Although Defendants claim that Krishnan's alleged "planning and arranging to compete with Blueprint while . . . still employed by Blueprint," "sharing Blueprint's customer/client list with others," and general "interference with Blueprints

business partners" breaches the Employment Agreement and caused Blueprint material harm, Defendants have presented no evidence to support these assertions outside alleged third-party communications—none of which are specified.  <u>See</u>, D. 4 ¶¶ 31-37.  Accordingly, the Court grants summary judgment to Krishnan as to Counterclaim V.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion regarding choice of law, D. 57; ALLOWS Krishnan's motion for partial summary judgment as to Defendants' counterclaims, but denies it as to liability as to Count I and Count II of Defendants' claims, D. 44; and ALLOWS Defendants' motion for summary judgment as to Krishnan's wage law claim pursuant to Mass. Gen. L. c. 149 (Count I), and DENIES Defendants' motion for summary judgment as to Krishnan's wage law claim pursuant to N.H. R.S.A. (Count II) and the contract and unjust enrichment claims, Counts III, IV and V.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge